UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACINTO RAYMUNDO BRITO,<br>Petitioner,<br>v.<br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE), et al.,<br>Respondents. | No. 1:26-cv-07869-DC-CSK<br><br><u>ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS AND MOTION FOR TEMPORARY RESTRAINING ORDER</u><br><br>(Doc. Nos. 1, 3) |

This matter is before the court on Petitioner's motion for a temporary restraining order (Doc. No. 3), filed in conjunction with his petition for writ of habeas corpus brought under 28 U.S.C. § 2241, challenging his ongoing immigration detention. (Doc. No. 1.) The parties do not oppose the court resolving Petitioner's habeas petition together with his motion for temporary restraining order. (Doc. Nos. 11 at 1; 12 at 2.) For the reasons explained below, the court finds that Respondents violated Petitioner's constitutional right to due process by failing to provide him with a prompt custody redetermination hearing before an immigration judge, specifically by not providing such hearing until nearly six weeks after his initial request. Thus, the court will grant Petitioner's habeas petition and motion for a temporary restraining order.

/////

## BACKGROUND

Petitioner Jacinto Raymundo Brito is a native and citizen of Guatemala. (Doc. No. 1 at ¶ 11.) Petitioner entered the United States without inspection in 2012. (*Id.* at ¶ 17.) Petitioner was a minor at the time of his entry. (*Id.*) Petitioner has resided at liberty in the United States for the over thirteen years since his entry. (*Id.* at ¶ 18.) On August 14, 2026, Petitioner was detained by Immigration and Customs Enforcement ("ICE") agents while driving home from work. (*Id.* at ¶ 20.) Petitioner was not engaged in any wrongdoing at the time of his arrest. (*Id.*) Petitioner alleges he was not presented with a warrant for his arrest. (*Id.* at ¶¶ 20, 27.) Petitioner has remained in ICE custody since his arrest. (*Id.* at ¶ 24.)

On September 25, 2026, Petitioner filed the pending habeas petition arguing that his warrantless arrest without notice or a pre-deprivation custody hearing violated his right to due process. (Doc. No. 1.) On that same day, Petitioner filed the pending motion for a temporary restraining order seeking his immediate release. (Doc. No. 3.) On September 28, 2026, Respondents filed an opposition. (Doc. No. 11.) Respondents attached to their opposition Petitioner's record of deportable alien, notice to appear, and an immigration judge's order denying Petitioner's request for bond. (Doc. Nos. 11-1–11-2.) The immigration judge's order indicates that Petitioner appeared for his custody redetermination hearing before her on September 22, 2026. (Doc. No. 11-2 at 2.) On September 29, 2026, Respondents separately filed an exhibit containing Petitioner's warrant for arrest of alien and notice of custody determination, which indicates that Petitioner requested a custody redetermination hearing upon his arrest on August 14, 2026. (Doc. Nos. 13-1; 13-2.) Also on September 29, 2026, Petitioner filed a reply. (Doc. No. 12.)

## LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas

corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). "[T]he 'in custody' provision . . . requires only that a petitioner be incarcerated—or, as here, in INS custody—at the time a habeas petition [was] filed." *Abdala v. I.N.S.*, 488 F.3d 1061, 1064 (9th Cir. 2007). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr.*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678 (2001).

**DISCUSSION**

Petitioner argues that Respondents violated his Fifth Amendment right to due process by "arbitrarily arresting and detaining him without a warrant, without prior notice, without any wrongdoing, and without a pre-deprivation hearing." (Doc. No. 1 at 6.) In their opposition, Respondents contend that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1226(a), and that he has received all of the protections provided to him pursuant to that section. (Doc. No. 11 at 3.) Respondents further contend that the Ninth Circuit has held that those statutory procedures "are facially adequate [to satisfy due process] and that as-applied claims require a showing that additional safeguards would materially reduce error." (Doc. No. 11 at 3) (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203 (9th Cir. 2022)).

**A. Statutory Authority for Detention**

Section 1226(a) established the "general rule" for the "arrest, detention, and release" of noncitizens already present in the United States "who are believed to be subject to removal." *Nielsen v. Preap*, 586 U.S. 392, 396 (2009). Section 1226(a) and its implementing regulations mandate that the government may only detain noncitizens believed to be subject to removal "under the authority of Form I-200, Warrant of Arrest" issued by designated supervisory officers. 8 C.F.R. § 236.1(b). Following detention, the government "may" continue to detain such noncitizens "pending a decision on whether [they are] to be removed from the United States." 8 U.S.C. § 1226(a). The government may additionally detain noncitizens without a warrant in certain exigent circumstances not alleged here. *See* 8 U.S.C. § 1357(a)(2). Regardless of whether

the noncitizen's detention is with or without a warrant, Department of Homeland Security ("DHS") officers must conduct an initial custody determination upon the noncitizen's arrest to determine whether detention or release is appropriate under § 1226(a). 8 C.F.R. § 236.1(c)(8). The DHS officer making this initial custody determination memorializes the decision on Form I-286, notice of initial custody determination. 8 C.F.R. § 236.1(g). The notice of custody determination also includes "the formal mechanism—a box the detainee may check—to immediately request" that an immigration judge review the initial custody determination at a custody redetermination hearing. *Garcia-Maya v. Blanche*, No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *8 (D. Nev. July 7, 2026). If the noncitizen checks this box, or otherwise requests a custody redetermination hearing, the noncitizen is entitled to such a hearing in immigration court. *See* 8 C.F.R. §§ 1236.1(d)(1), 1003.19.

Here, Petitioner contends that his August 14, 2026 arrest was "without a warrant, without prior notice, without any wrongdoing, and without a pre-deprivation hearing."[1] The documents attached to Respondents' opposition, however, rebut Petitioner's allegations. Specifically, Respondents filed with the court: (1) Petitioner's notice to appear, dated August 14, 2026 (Doc. No. 11-1 at 4–6); (2) Petitioner's arrest warrant, showing proof of service on August 14, 2026 (Doc. No. 13-1); and (3) Petitioner's notice of custody determination, showing proof of service on August 14, 2026 (Doc. No. 13-2). Petitioner checked the box on the notice of custody determination to request an immigration judge's review of that determination. (Doc. No. 13-2.) Petitioner does not dispute the authenticity of these documents in his reply. (Doc. No. 12). Thus,

[1] This court has held that where a noncitizen was previously detained and released by DHS, or where DHS otherwise had knowledge of the noncitizen's unlawful presence in the United States before seeking to detain them, the noncitizen maintains a liberty interest in their continued freedom such that they are entitled to notice and a pre-deprivation hearing before they may be detained. *See, e.g.*, *Labrador-Prato v. Noem*, 815 F. Supp. 3d 1113 (E.D. Cal. Dec. 2, 2025) (finding that noncitizen previously released pursuant to § 1226(a) is entitled to pre-deprivation bond hearing before re-detention); *Oliveira Tinoco v. Albarran*, No. 1:26-cv-05505-DC-CKD, 2026 WL 2949219 (E.D. Cal. Oct. 1, 2026) (same as to noncitizen who overstayed visa). Here, there is no indication that Petitioner has been previously released from immigration custody or that the government was otherwise aware of his presence within the United States before his arrest. Petitioner does not make any further argument as to why he is entitled to a pre-deprivation bond hearing.

based on this record, the court does not find that Petitioner's initial detention violated his statutory rights under § 1226(a) .

This finding, however, does not end the analysis. The court notes with concern that Petitioner received his custody redetermination hearing on September 22, 2026, approximately six weeks after he requested the hearing. (Doc. No. 11-2.) Respondents do not address or explain this extended delay in providing Petitioner with the custody redetermination hearing to which he is statutorily entitled.

**B. Due Process**

While "[t]he right to be free from temporary detention before adjudication, absent adequate justification, is at least as old as the Magna Carta," "the principle that the government cannot arbitrarily detain people, including noncitizens, has been a central tenet of . . . American legal traditions since the thirteenth century." *Padilla v. U.S. Immigr. and Customs Enf't*, No. 24-2801, 2026 WL 2822044, at *16–17 (9th Cir. 2026). Indeed, "[t]he application of the Fifth Amendment to noncitizens has been repeatedly and resoundingly reaffirmed . . . since *Wong Wing v. United States*, 163 U.S. 228, 238 (1896)." *Padilla*, 2026 WL 2822044, at *11. "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1182 (D. Haw. Oct. 10, 2025).

There are two steps to analyzing a procedural due process claim. *Berrios v. Albarran*, No. 25-cv-01544-TLN-CSK, 2025 WL 3171140, at *2 (E.D. Cal. Nov. 13, 2025) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). The first step is to assess whether a protected liberty interest under the Due Process Clause exists. *Id.* "[T]he second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Id.*

1. <u>Liberty Interest</u>

Freedom from detention "lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Noncitizens right to liberty has been protected by the Due Process Clause "since *Wong Wing v. United States*, 163 U.S. 228, 238 (1896)."

Here, Petitioner entered the United States as a minor in 2012. (Doc. No. 1 at ¶ 17.) Petitioner has lived continuously in the United States in the fourteen years since his entry. (*Id.* at ¶ 18.) Petitioner owns and operates his own nursery business in his hometown of Homestead, Florida. (Doc. No. 3 at 3.) He has not accrued any criminal history during his time in this country. (Doc. No. 1 at ¶ 19.) Courts within the Ninth Circuit have found that a noncitizen maintains a liberty interest in living freely in the United States, including where the government was not previously aware of the noncitizen's presence here. *Marco H.E. v. Warden of the Cal. City. Det. Facility*, No. 1:26-cv-07729-TLN-SCR, 2026 WL 3071606, at *2 (E.D. Cal. Oct. 14, 2026) (finding that Petitioner not previously detained by ICE who "resided in the United States for over seven years and [] has a family" here maintained liberty interest in his continued freedom). Further, Respondents do not contest that Petitioner maintains a liberty interest in remaining free from detention. Thus, the court finds that Petitioner maintains a liberty interest in his continued freedom in the United States.

2. Sufficiency of Procedural Protections

Since Petitioner has a protected liberty interest, the court must determine the procedures necessary to ensure any deprivation of that interest accords with the Constitution. *See Ky Dep't of Corr.*, 490 U.S. at 460 (explaining that the second analytical step of a procedural due process claim "examines whether the procedures attendant upon [the alleged] deprivation were constitutionally sufficient"). To make that determination, the court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz*, 53 F.4th at 1206–07 (applying the *Mathews* test to a procedural due process challenge to a detention under 8 U.S.C. § 1226, explaining that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); *see also Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context). The *Mathews* test considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. 424 U.S. at 335.

As established by the above analysis, the first *Mathews* factor weighs in Petitioner's favor because he has a liberty interest in remaining free from detention. The second *Mathews* factor

considers the risk that Petitioner's liberty interest may be erroneously deprived by the challenged procedure. Here, the challenged procedure is the custody redetermination hearing provided to Petitioner approximately six weeks after his initial request for that hearing. Courts in the Ninth Circuit have found that such a delay renders that hearing inadequate to protect the noncitizen's right to due process. For instance, in *Cancino Castellar v. McAleenan*, 388 F. Supp. 3d 1218 (S.D. Cal. 2019), multiple noncitizens brought a class action alleging that it was the policy and/or practice of immigration detention facilities in the Southern District of California to "detain[] individuals for extended periods of time without promptly presenting them for an initial hearing before an immigration judge." *Cancino Castellar*, 388 F. Supp. 3d at 1226. Specifically, the plaintiffs alleged that they were forced to wait "one to three months" following their detention before they appeared before an immigration judge. *Id.* "At the heart of" the plaintiffs' argument was that the "Due Process Clause does not permit the government to detain [the plaintiffs] or other members of the putative class without promptly presenting them before a judge as a matter of both substantive and procedural due process." *Id.* at 1230. The defendants moved to dismiss, arguing, in part, that the statutory protections of § 1226(a) were sufficient and that the alleged delay in presenting the plaintiffs to an immigration judge did not render it any more likely that their detention was erroneous. *Id.* at 1240. The court rejected that argument, finding that the safeguard of a custody redetermination hearing "consists of two features: promptness and a 'neutral adjudicator.'" *Id.* The court emphasized that there "is a recognized value to a prompt post-deprivation hearing when a fundamental liberty interest is at issue even in non-confinement cases." *Id*. The court further emphasized that the initial custody determination was insufficient because "the determination regarding initial custody and detention are made by officers of the arresting agency." *Id.* at 1241. The court concluded that the plaintiffs had "proffered allegations that plausibly show a probative value of the additional safeguard" of requiring prompt custody redetermination reviews by an immigration judge.[2] *Id.* at 1242; *see also Feng v. Lyons*, No. 1:26-

[2] *Cancino Castellar* was resolved through a consent judgment wherein Respondents agreed to provide class members who requested a prompt first appearance a hearing before an immigration judge within 8 days of issuance of their notice of appearance. *Cancino Castellar*, Doc. No. 250 at 5 (S.D. Cal. Mar. 7, 2024).

cv-00235-DJC-SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) ("Provision of a bond hearing after months of detention without the opportunity to seek release on bond cannot be said to satisfy due process where that bond hearing is a matter of statutory right.").

Further, there is an additional concern in Petitioner's case that supports this court's determination that Petitioner's delayed bond hearing presents an unacceptable risk of erroneous deprivation of his liberty interest. As Petitioner emphasizes in his reply, Petitioner reserved his right to appeal the immigration judge's custody determination to the Board of Immigration Appeals at the custody redetermination hearing. (Doc. No. 12 at 2.) Despite this, the immigration judge's order inexplicably indicates that Petitioner waived his right to appeal. (Doc. No. 11-2 at 2.) This unexplained error is particularly egregious here, as Respondents argue that Petitioner's failure to exhaust administrative remedies by appealing the bond determination forecloses his request for habeas relief. (Doc. No. 11 at 3.) Thus, Respondents contend that Petitioner's sole method to challenge his delayed bond hearing is an appeal which he involuntarily waived. Respondents do not acknowledge the discrepancy or otherwise address how it affects Petitioner's ability to challenge the immigration judge's determination. Accordingly, the court finds that the second *Mathews* factor weighs in Petitioner's favor.

As to the final *Mathews* factor, the court acknowledges that the government has an interest in the steady enforcement of its immigration laws, but also recognizes that the government's interest in detaining Petitioner for over a month without providing him a hearing to which he is statutorily entitled is low. Indeed, the government's interest in enforcing its immigration laws is "ultimately served, not hindered, by the procedural protections of § 1226(a)" because those protections "reduce the fiscal and administrative burden of civil detention by ensuring that only noncitizens who are actually dangerous or a flight risk are detained." *Morejon v. Mattos,* No. 2:26-cv-00427-GMN-BNW, 2026 WL 3026483, at *7 (D. Nev. Oct. 8, 2026). This court therefore finds that the third *Mathews* factor, too, weighs in Petitioner's favor.

Thus, the *Mathews* factors favor Petitioner and illustrate that due process required him to be provided with a prompt custody redetermination hearing before an immigration judge. The proper relief in this case is to return Petitioner to the status quo ante litem, meaning his "last

uncontested status" immediately preceding the pending controversy. *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1119 (E.D. Cal. Sep. 23, 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000).

**CONCLUSION**

For the reasons stated above,

1. Petitioner's petition for writ of habeas corpus (Doc. No. 1) and Motion for a Temporary Restraining Order (Doc. No. 3) are GRANTED as follows:
    a. Respondents shall immediately release Petitioner Jacinto Raymondo Brito (A-243-007-496) from their custody;
    b. Upon his release, Respondents shall not impose any additional restrictions on Petitioner, such as electronic monitoring, unless that is determined to be necessary at a future custody hearing;
    c. Respondents shall RETURN all of Petitioner's documents and possessions upon his release from custody;
    d. If the government seeks to re-detain Petitioner, they shall provide him with a prompt bond hearing at which Petitioner shall bear the burden of showing that he is not a flight risk or a risk to community safety;
2. The Clerk of the Court is directed to serve a copy of this order on the Golden State Annex Detention Facility; and
3. The Clerk of the Court is directed to enter judgment for Petitioner and close this case.

IT IS SO ORDERED.

Dated: **October 16, 2026**

Dena Coggins
United States District Judge